458

CENTRAL MONTANA RAIL, A Montana Corporation, individually and as full assignee of the State of Montana, of all jurisdictional and substantive legal rights the State of Montana possesses against BNSF Railway Company in this case, Plaintiff—Appellee,

v.

BNSF RAILWAY COMPANY, a Delaware corporation, Defendant—Appellant.

No. 07–35108.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 2, 2008.

Filed July 11, 2008.

* Judge Ferguson concurred with this disposition prior to his death on June 25, 2008

** The Honorable Otis D. Wright II, United States District Judge for the Central District of California, sitting by designation.

A. Clifford Edwards, Esq., Edwards, Tolstedt & Frickle, Philip L. McGrady, Roger W. Frickle, Edwards Frickle Anner–Hughes & Cook, Billings, MT, for Plaintiff–Appellee.

Matthew B. Hayhurst, Randy Cox, Boone Karlberg, PC, Missoula, MT, for Defendant–Appellant.

Before: FERGUSON * and CALLAHAN, Circuit Judges, and WRIGHT,** District Judge.

MEMORANDUM ***

BNSF Railway Company appeals from the district court's denial of its motion to compel arbitration, pursuant to the Federal Arbitration Act, of Central Montana Rail's ("CMR") breach of contract and tort claims against BNSF in connection with the parties' competition to do business

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

with a third party, a grain elevator operator.

At issue is whether an arbitration agreement between BNSF and CMR encompasses CMR's three claims for damages against BNSF. We conclude that the district court was correct in finding that the dispute between the parties is not significantly related to the contract containing the arbitration agreement.

In or around 1980, BNSF purchased roughly 70 miles of track near Geraldine, Montana then sought to abandon it. This was directly contrary to an agreement BNSF had made with Montana. Montana sued BNSF in state court for breach of its agreement. In 1984 the parties entered into a settlement agreement which contemplated that BNSF would transfer the line to Montana and Montana would obtain a short line railroad operator to perform rail services on the line. As part of the settlement agreement it was further provided:

- Montana would require its short line operator to enter into an agreement for the interchange of railroad cars with BNSF. A paragraph of the anticipated interchange agreement between BNSF and the future short line operator included the following binding arbitration language:

If at any time a question or controversy shall arise between the parties hereto touching the construction of any part of this Agreement or concerning the business or manner to (sic) transacting business carried on under its provisions, or concerning the observance or performance of any of the conditions herein contained, or the rights or obligations of any party under or arising from this Agreement upon which question the parties cannot agree, such question or controversy shall be submitted to arbitration....

- The Settlement Agreement had no provision for arbitration of any dispute arising out of the relationship between Montana and BNSF.

- BNSF agreed to pay $8 million to Montana, most of which constituted "a donation" to Montana "for the benefit of rehabilitation of the Geraldine Line."

- BNSF and Montana agreed to "maintain competitive rates for traffic originating or terminating" along the Geraldine Line, defining the term "competitive rates" as "rate adjustments which do not have a predatory impact on either party."

In March 1985, Montana selected CMR to operate the Geraldine Line. In June 1986, CMR and BNSF entered into an agreement to "facilitate the interchange of cars" between them ("the Interchange Agreement"). The Interchange Agreement provided that "[c]ars for delivery to [CMR]" were to be "set out by [BNSF] on the Interchange Track" and "moved away" by CMR. Likewise, "[c]ars for delivery to [BNSF]" were to be "set out by [CMR] on the Interchange Track."

Paragraph 14 of the Interchange Agreement provided for binding arbitration.

The current dispute arose in 2000 when CMR "began negotiations with United Harvest to put a proposed [grain] shuttle facility/elevator on CMR trackage...." BNSF encouraged United Harvest to instead construct the facility on BNSF trackage less than 500 yards away, and subsidized the construction of a "loop track at the new shuttle facility." BNSF also offered preferential tariffs and unpublished incentives which, along with its enticing the shuttle facility from CMR, in the view of CMR did violence to CMR's ability to remain competitive with surrounding shuttle facilities.

At CMR's request, BNSF agreed to allow CMR to build a connection track between the Geraldine Line and the new United Harvest grain elevator, and to have temporary trackage rights over BNSF tracks to reach the United Harvest facility until completion of the connecting track.

After CMR began construction of the connecting track, BNSF told CMR that "the deal was off on the grounds of operating rail labor issues." And as for the temporary trackage rights, BNSF "set the liability insurance requirements" for the temporary trackage rights "so high" that it was "economically unfeasible" for CMR to deliver grain to the United Harvest facility.

CMR filed a complaint in the Montana state court, asserting claims against BNSF for breach of contract, intentional interference with prospective business advantage and negligent misrepresentation. BNSF removed the action to federal district court. When CMR's attempt to remand failed, BNSF filed a motion to compel arbitration, pursuant to § 4 of the Federal Arbitration Act, (9 U.S.C. § 4.) The district court denied the motion to compel arbitration and this appeal followed.

The district court found that, while there was a valid arbitration agreement between the parties, the agreement did not reach any of the claims brought by CMR. We agree. The contract which contains the arbitration agreement is the Interchange Agreement, which has as its sole subject the interchange of rail cars between BNSF and CMR and the logistics of that interchange, e.g. insurance, liability, and BNSF's payments/rates for receiving cars from CMR.

On the breach of contract claim, we find that it is not arbitrable because this claim does not arise out of, nor is it in any way connected with or is it related to the Interchange Agreement. Rather, the alleged conduct at issue arose out of BNSF's agreement with Montana to maintain competitive rates with the eventual Geraldine Line operator, CMR.

On the tortious interference with business advantage cause of action, the claim by CMR is that BNSF interfered with CMR's relationship with Montana. Clearly this has no relationship, even tangentially, with the Interchange Agreement.

Lastly, there is the claim for negligent misrepresentation which touches upon a number of issues regarding the construction of additional trackage to facilitate deliveries to the United Harvest facility. More specifically, CMR claims that BNSF made negligent misrepresentations that induced it to undertake the construction of additional trackage (and then made the new tracks economically unfeasible.)

One concept is common to both the Interchange Agreement and to the current dispute—liability insurance requirements. That is not sufficient, however, to bring the current dispute within the ambit of the Interchange Agreement. The subject of insurance is present in the Interchange Agreement and in CMR's complaint for very different reasons. In the Interchange Agreement the parties were attempting to establish in advance the apportionment of liability and the shifting of financial loss in the event of property damage in connection with the interchange of rail cars between them. In contrast, the subject of insurance is present in the CMR complaint in connection with CMR's desire to provide services to a *third party* on BNSF's trackage. It is alleged that BNSF set the liability insurance requirements for temporary trackage rights so high that it was economically unfeasible for CMR to deliver grain to the United Harvest facility. Providing rail services to a third party by CMR on BNSF's trackage

was not a scenario contemplated by the Interchange Agreement. Therefore it is not surprising that the claims at issue in CMR's complaint are not significantly related to the Interchange Agreement between the parties. These claims are not arbitrable and the district court was correct to deny BNSF's motion to compel arbitration.

We therefore AFFIRM.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.